UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 14-10363-RGS

UNITED STATES OF AMERICA

v.

GLENN CHIN

MEMORANDUM AND ORDER
ON RESTITUTION

March 20, 2018

STEARNS, D.J.

Before the court is the government's Motion for Restitution following defendant Glenn Chin's conviction for mail fraud racketeering (RICO), conspiracy, and violations of the federal Food, Drug, and Cosmetic Act (FDCA). The government seeks $82 million in restitution to be paid to the families of the deceased and the survivors of a national spinal meningitis epidemic traced to defective doses of injectable methylprednisolone acetate manufactured by New England Compounding Center (NECC). Chin was employed at NECC as the supervising pharmacist. I agree with the government that restitution is required by the Mandatory Victim Restitution Act (MVRA), 18 U.S.C. § 3663A(c)(1)(A)(ii), which encompasses the victims of crimes "committed by fraud or deceit." However, I respectfully part

1

company with the government over the definition of a "victim" for purposes of the MVRA.

By way of background, following Chin's sentencing the court scheduled a hearing on forfeiture and restitution for February 15, 2018. Immediately prior to the hearing, Chin filed a motion to continue consideration of the restitution issue, *see* Dkt # 1437, as did counsel for Chin's co-defendant Barry Cadden, *see* Dkt # 1439. In response, the court ruled that it would hear the government's argument for restitution, but would also give Chin the opportunity to advocate for a deferral of a decision on restitution.[1] Having had the benefit of the views of the government, Chin, and Cadden, the court agrees with the government that the legal issues should be resolved now, at least with respect to Chin, but also agrees with Chin that it should forbear setting a final amount until the cases against the remaining NECC defendants are resolved.[2] Finally, I disagree with Cadden that his case will be prejudiced by the court's resolution of the legal issues involving Chin.

---

[1] It should be noted that the issue of forfeiture has been resolved. On February 23, 2018, the court issued a Memorandum and Order directing Chin to forfeit the sum of $175,000 to the United States. See Dkt # 1448.

[2] The reason for the delay with respect to restitution in Cadden's case is jurisdictional. The government is currently appealing this court's ruling with respect to the economic loss calculations under the Sentencing Guidelines, specifically whether patients injected with NECC's tainted drugs qualify as victims for purposes of scoring the loss-driven Guidelines offense

Let me explain. Although the MVRA allows for joint and several liability, it also affords the district court considerable discretion in apportioning a restitution award among co-defendants based on their relative culpability and respective financial resources. *See* 18 U.S.C. § 3664(h) ("[T]he court may make each defendant liable f0r payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."); *United States v. Salas-Fernández*, 620 F.3d 45, 49 (1st Cir. 2015) ("The court may consider, among other things, the relative culpability of those responsible for the loss. In the last analysis, however, the court is not required to use any particular formula for apportionment or, indeed, to apportion the loss at all.") (internal citation omitted).

---

level. The definition of "victim" for purposes of the Guidelines loss calculation is germane to the question of which individuals or entities qualify as "victims" of fraud under the MVRA. This is so because the meaning of "victim" for restitution purposes is given a more expansive definition than it is for sentencing purposes, as discussed below. This is why I find unconvincing the government's reliance on *Manrique v. United States*, 137 S. Ct. 1266 (2017). *Manrique*, as far as I can tell, did not involve an initial appeal from a judgment that included as part of the appeal important issues bearing on the court's eventual restitution calculation.

Given the MVRA's broad grant of discretion to the district court, any restitution order issued as to Chin will not be binding on Cadden. The restitution proceedings in Cadden's case will revive when jurisdiction is restored to the district court, either by a final resolution of the parties' cross-appeals in the First Circuit, or by an order of remand from the Court of Appeals.[3]

Returning to Chin's case, I begin with the MVRA's definition of "victim":

> [A] person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

18 U.S.C. § 3663A(a)(2). The First Circuit's "'bedrock principles' regarding restitution orders," *United States v. Cutter*, 313 F.3d 1, 7 (1st Cir. 2002), require that the "the government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal connection between the conduct and the

---

[3] On February 9, 2018, the government filed a motion in the First Circuit seeking an order from the Court of Appeals permitting this court to proceed on the restitution issue notwithstanding the current appeal. *See* U.S.C.A. Case No. 17-1712 (Feb. 9, 2018). No action has been taken as yet by the Court of Appeals on that motion.

loss is not too attenuated (either factually or temporally)." *Id.* (quoting *United States v. Vaknin*, 112 F.3d 579, 590 (1st Cir. 1997)).

Case law is consistent in holding that a loss for restitution purposes must be causally tied to the underlying offense of conviction, in Chin's case, mail fraud and racketeering conspiracy based on predicate acts of mail fraud. *See Hughey v. United States*, 495 U.S. 411, 420 (1990) (noting that "loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order"); *see also United States v. Romines*, 204 F.3d 1067, 1069 (11th Cir. 2000) (defendant who stole $8,000 from two good Samaritans in the process of absconding from a halfway house in violation of the terms of his supervised release did not owe $8,000 in restitution because the "offense of conviction" was the escape from custody, which was unrelated to the embezzlement). The requirement of a nexus to the offense of conviction derives from the plain text, "directly harmed" limitation, of 18 U.S.C. 18 U.S.C. § 3663A(a)(2).

The government's calculation of an $82 million restitution award is based on a tabulation of the medical expenses, costs for physical and occupational therapy, lost income, burial expenses, and other expenditures compiled by patients who were injected with NECC's contaminated drugs (or their survivors). *See* Gov't's Mot. for Restitution, Dkt # 1400 at 1. Even

assuming that this is the correct measure of the restitution award – I don't think it is for reasons to be explained – reality casts a cold light on the $82 million request. After several years of unemployment while awaiting trial, having commenced serving an eight-year prison sentence, saddled with a $175,000 forfeiture order and $5,450 in victim-witness fees, a wife awaiting trial for her role in NECC's affairs, while trying to support two very young children with no visible means of income, Chin and his family are destitute. The government does not pretend otherwise. Government counsel conceded at oral argument that any restitution award, especially one in the tens of millions of dollars, would be no more than a symbolic gesture, and that it has so informed the affected patients and their families. It is true that the ideal of restitution as a *beau geste* meant to comfort the afflicted has a foothold in the case law. *See, e.g.*, *United States v. Day*, 418 F.3d 746, 758 (7th Cir. 2005) ("Congress, in adopting the MVRA, believed that the law should be concerned first with the victim's right to full restitution and the defendant's concomitant recognition of the duty to pay full restitution, albeit a largely symbolic one . . . . Therefore, the fact that a defendant may never be able to satisfy a restitution award is no longer grounds for reversing that award."). Still, a skeptic might question whether the law, which approaches most issues with a gimlet eye, should be in the business of inflating expectations

by holding out an illusory promise of compensation that has no hope of ever materializing.

Returning to the statute, and again emphasizing, as I did at sentencing, that I do not in any way suggest that the patients injected with NECC's tainted drugs were not victims of the terrible tragedy spawned by NECC, under the law as I must apply it, the "direct" victims of the mail fraud crimes for which Chin was convicted were the medical facilities who purchased drugs from NECC.[4] The *sine qua non* of mail fraud (the basis for the finding that NECC operated as a racketeering enterprise) is the use of the mails for the purposes of "obtaining money or property by means of false or fraudulent pretenses, representations, or promises" made to the recipient. *See* 18 U.S.C. § 1341. Here, NECC made no representations to end-users and patients for the purposes of obtaining property (money); rather, it made those

---

[4] I would also note that separate and apart from the criminal proceedings against Chin and his co-conspirators, patients who were injected with NECC's drugs, and their families, have had access to a civil bankruptcy settlement of approximately $200 million, and also to ongoing civil, multidistrict products liability litigation in the U.S. District Court for the District of Massachusetts. The government is correct that under governing precedent, a court should not offset the amount ordered in criminal restitution based on the availability of civil remedies (and I do not intend to do so here). I only raise these other proceedings to emphasize that the patients who were adversely affected by NECC's drugs, while not "victims" for present purposes under the MVRA's statutory definition, have other more realistic avenues of recovery.

misrepresentations (that NECC's products were USP-797 compliant) to the hospitals and clinics that purchased the drugs.

While the government suggested at oral argument that the word "sterile" on the syringes in question, if seen by a patient prior to injection, would potentially constitute a misrepresentation for mail fraud purposes, there is simply no evidence in the lengthy record of the case to suggest that this ever occurred. To the extent that patients may have implicitly relied on NECC's representations by relying on their doctors as learned intermediaries, this additional layer of insulation between NECC and the patient further renders any such reliance "too attenuated" to satisfy the "direct causation" standard of the MVRA. *See Cutter*, 313 F.3d at 7.

With these rulings in mind, the court will calculate the total restitution award as the loss suffered by the hospitals and clinics that purchased lots of degraded or defective drugs during the life of the racketeering enterprise as the court has determined it. As that amount is to be apportioned among Chin, Cadden, and the six remaining defendants whose liability has yet to be established, the court will defer setting dollar amounts for each defendant until the entire roster of those liable is filled.[5]

---

[5] The court has set the trial of the remaining NECC defendants to begin October 2, 2018.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE