# United States Court of Appeals
## For the First Circuit

No. 17-2048

UNITED STATES OF AMERICA,

v.

GLENN A. CHIN,

Defendant.

TRUSTEES OF BOSTON UNIVERSITY,
OWNER OF THE RADIO STATION WBUR (WBUR),

Intervenor, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Barron and Selya, Circuit Judges,
and Katzmann, Judge.*

Jeffrey J. Pyle, with whom Prince Lobel Tye LLP was on brief, for appellant.

Gregory Dubinsky, with whom Evan H. Stein and Holwell, Shuster & Goldberg LLP were on brief, for Court-appointed amicus curiae in support of affirmance.

Nashwa Gewaily, New England First Amendment Coalition, Sigmund D. Schutz, and Preti, Flaherty, Beliveau & Pachios, LLP, on brief as amici curiae in support of appellant.

_____

* Of the United States Court of International Trade, sitting by designation.

January 18, 2019

**BARRON**, <u>**Circuit Judge**</u>.  This case concerns an appeal by the Trustees of Boston University, as owners of WBUR, which is a public radio station in Boston, Massachusetts.  We will refer to the appellant by the radio station's name, WBUR.

The issue that we must decide arises from WBUR's motion in the fall of 2017 to intervene in a then still-ongoing criminal trial in the United States District Court for the District of Massachusetts.  In that motion, WBUR also requested that the District Court unseal the names and addresses of the jurors in the criminal case and provide that information to WBUR "as soon as possible" after the announcement of the jury's verdict.

The District Court granted the motion to intervene but otherwise denied in substantial part the motion to unseal the requested information.  We now vacate and remand.

**I.**

WBUR filed this motion in the criminal case against New England Compounding Center ("NECC") supervisory pharmacist Glenn Chin.  He had been charged with committing mail fraud and violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, based on, among other things, twenty-five predicate acts of second-degree murder, in connection with a nationwide distribution of contaminated medications that caused a fatal outbreak of fungal meningitis.

Chin's trial began in federal district court in Boston on September 19, 2017.  It ended a little more than a month later, on October 25, 2017, when the jury found Chin guilty of mail fraud and lesser predicate offenses under RICO but not guilty of the twenty-five predicate acts of second-degree murder.

A week before the trial ended, on October 18, 2017, WBUR filed its motion both to intervene in the criminal case and to obtain "as soon as possible after the verdict is announced" the names and addresses of the then-deliberating jurors.  On October 27, 2017 -- just two days after the jury had returned its verdict -- the District Court issued an order allowing intervention in the criminal case by WBUR but denying, without prejudice, its motion regarding the disclosure of juror names and addresses.

The District Court stated in that order that it would "release" juror names and hometowns, but not addresses, and that it would do so only after Chin's sentencing, which was scheduled for January 30, 2018.[1]  The District Court did note in its order,

---

[1] One of Chin's co-defendants was Barry Cadden, the owner of NECC, whose case had gone to trial in federal district court in Boston six months earlier.  At Cadden's trial, the jury returned a verdict sheet suggesting that the jurors had not voted unanimously to acquit Cadden of second-degree murder, even though the not-guilty verdict required unanimity.  WBUR filed a motion for immediate access to juror names and addresses, and the District Court ruled that it would release a list of each juror's name and hometown, though not each juror's address, only after sentencing, which was to occur three months later.  WBUR, though unable to identify every juror even after receiving the jurors' names and hometowns, ultimately interviewed two jurors from the Cadden trial

however, that it would "consider an earlier release of the juror list upon submission by [WBUR] of an appropriate protective order that is . . . crafted to insure against any unnecessary dissemination of the jurors' personal identification in the news media or over the internet (without the juror's express assent)."

The District Court based this possible condition on release on a protective order requirement that Judge Young had imposed one week earlier in a similar ruling regarding WBUR's request for disclosure of juror names and addresses in another case in the District of Massachusetts: United States v. Wright, No. 15-cr-10153-WGY (D. Mass. Oct. 20, 2017), ECF No. 357. Judge Young withdrew the protective order requirement in Wright on November 3, 2017, however, after WBUR challenged that requirement on the grounds that it would be impractical and perhaps unconstitutional.

A little less than two weeks later, on November 16, 2017, WBUR appealed from the District Court's order denying its request in Chin. The next day, the District Court issued an "Amended Order on Motion of [WBUR] to Unseal Juror Names and Addresses," which, just as Judge Young had done in Wright, withdrew the protective order requirement. In the amended order, the District Court reiterated that it would "release" a list of the Chin jurors' names

---

and aired a report stating that those two jurors did not understand that not-guilty verdicts required unanimity.

and hometowns, but not addresses, and that it would do so only after sentencing.

In accord with the initial order, on January 31, 2018, the day after the sentencing proceedings in Chin's case ended, the District Court issued an unsealed order containing a list of the jurors' names and their hometowns, but not their addresses. Because neither the government nor Chin opposes WBUR's motion on appeal, we ordered the appointment of amicus counsel ("Court-appointed amicus") to represent the position reflected in the District Court's order denying WBUR's motion in substantial part, a task that the amicus has ably performed.[2]

## II.

We begin by addressing our jurisdiction to hear this appeal, which turns out to be a task that is not without its complexities. The most prominent jurisdictional question that we confront concerns the possibility that this appeal has been mooted by the District Court's granting of partial relief to WBUR and the fact that Chin's sentencing has already occurred. But, before we get to that jurisdictional question, we address two others, the first of which relates to the appellant's status as an intervenor.

We stated in In re Globe Newspaper Co., 920 F.2d 88, 90 (1st Cir. 1990), that "the right of a non-party to intervene in a

---

[2] We also acknowledge the helpful amicus brief filed by the New England First Amendment Coalition, et al.

criminal proceeding is doubtful." But, we nonetheless concluded -- even without finding that the appellant there could intervene -- that we had jurisdiction over the appeal under the All Writs Act, 28 U.S.C. § 1651. See In re Providence Journal Co., Inc., 293 F.3d 1, 9 (1st Cir. 2002) (explaining that the All Writs Act gives "[a] federal court of appeals . . . the power to treat an attempted appeal from an unappealable (or possibly unappealable) order as a petition for a writ of mandamus" (quoting United States v. Horn, 29 F.3d 754, 769 (1st Cir. 1994))).

Here, however, the District Court did grant WBUR's motion to intervene. And, because that "legal decision" to grant WBUR's motion remained "unchallenged in [this] appeal despite the existence of ample opportunity to [challenge it]," it is now "law of the case for future stages of the same litigation" and therefore "should continue to govern the same issues." United States v. Matthews, 643 F.3d 9, 12 (1st Cir. 2011) (citations omitted). Thus, as an intervenor, WBUR may appeal the District Court's order denying its request for the disclosure of juror names and addresses, which WBUR filed before sentencing and thus before the matter had concluded -- assuming, that is, the appeal is not moot. See United States v. Blagojevich, 612 F.3d 558, 560 (7th Cir. 2010)

(applying the collateral order doctrine in finding jurisdiction over an appeal by an intervenor in a similar case).[3]

The next jurisdictional wrinkle that we must iron out concerns the timing of the appeal relative to the issuance of the District Court's amended order in this case. Neither WBUR nor Court-appointed amicus makes anything of the fact that the District Court issued its amended order the day <u>after</u> WBUR filed its notice of appeal. But, the general rule is that "[t]he filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." <u>Griggs</u> v. <u>Provident Consumer Discount Co.</u>, 459 U.S. 56, 58 (1982).

Nevertheless, "this circuit and others have recognized limited exceptions to this judge-made rule." <u>United States</u> v. <u>Torres-Oliveras</u>, 583 F.3d 37, 44 (1st Cir. 2009) (citing 16A Charles A. Wright, et al., <u>Federal Practice and Procedure</u> § 3949.1 (4th ed. 2009); <u>United States</u> v. <u>Ortega</u>, 859 F.2d 327, 334-35 (5th Cir. 1988)). And, arguably, the District Court's amended order here falls within one of the recognized exceptions because it does

---

[3] Nor do we think that the fact that the motion to unseal the juror names and addresses was denied "without prejudice" is of jurisdictional significance, under the collateral order doctrine, given that the request was for the release of the jurors' identifying information "as soon as possible" post-verdict.

not "alter the substance of the decision" to release juror names and hometowns after sentencing. See Wright, et al. § 3949.1.

In any event, we will treat the District Court's November 17, 2017 order as though it were an indicative ruling regarding the withdrawal of the protective order requirement. Cf. United States v. Maldonado-Rios, 790 F.3d 62, 65 (1st Cir. 2015) (per curiam) (treating a sentencing court's grant of a motion filed during the pendency of appeal as an indicative ruling under Federal Rule of Appellate Procedure 12.1). And, even if we consider on appeal only the District Court's October 27, 2017 order, our analysis of the merits is not affected. See Torres-Oliveras, 583 F.3d at 44.

We come, then, to the main potential jurisdictional obstacle to our reaching the merits of this appeal. Court-appointed amicus contends that the appeal is moot in its entirety, and thus no longer a live case or controversy requiring resolution, because the District Court released the names and hometowns of the Chin jurors on January 31, 2018.

"The burden of establishing mootness rests with the party invoking the doctrine." ACLU of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 52 (1st Cir. 2013). Because no factual findings bear on the matter, we decide the legal issue de novo. See id.

As to WBUR's appeal of the denial of its request for the jurors' addresses, Court-appointed amicus argues that the access to names and hometowns that the District Court provided is sufficient for WBUR to identify the jurors and thus renders any opinion ordering the release of juror addresses "merely advisory." See Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003) ("If events have transpired to render a court opinion merely advisory, Article III considerations require dismissal of the case."). Accordingly, Court-appointed amicus contends that this aspect of WBUR's appeal is moot.

But, the District Court has not unsealed some of the information that WBUR sought in its motion -- namely, the addresses of the jurors. And, it is undisputed that WBUR has not been able to contact all twelve jurors in the Chin trial, even though the District Court provided WBUR with access to their names and hometowns. Consequently, the unsealing of the requested addresses, even at this point, would provide "effectual relief" to WBUR with respect to its appeal of the District Court's order denying its motion requesting the information that thus far has been withheld. ACLU of Mass., 705 F.3d at 52. This aspect of the appeal, therefore, is not moot.

The mootness question is not quite so easily resolved with respect to WBUR's appeal of the District Court's denial of the request to release the jurors' identifying information post-

verdict, rather than post-sentencing. The sentencing occurred nearly a year ago. There is no way to turn back the clock. Thus, there is some force to the suggestion of mootness by Court-appointed amicus as to the aspect of WBUR's appeal that concerns the timing of the release of the requested information.

Nevertheless, in contending that this aspect of its appeal also is not moot, WBUR relies on an exception to the mootness doctrine that exists for a controversy that is "capable of repetition, yet evading review." Kingdomware Technologies, Inc. v. United States, 136 S. Ct. 1969, 1976 (2016) (quoting Spencer v. Kemna, 523 U.S. 1, 17 (1998)). In particular, WBUR argues that, although sentencing has already occurred, WBUR likely "will again be subjected to the alleged illegality" because that "alleged illegality" is capable of repetition and would continue to evade review. Murphy v. Hunt, 455 U.S. 478, 483 (1982) (per curiam); ACLU of Mass., 705 F.3d at 57 (emphasis omitted) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983)).

To qualify for this exception to the mootness doctrine, WBUR bears the burden of showing that "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." Gulf of Maine Fisherman's All. v. Daley, 292 F.3d 84, 89 (1st Cir. 2002) (quoting Weinstein v. Bradford, 423 U.S.

147, 149 (1975)).   We conclude that WBUR has made the required showing.

About three months elapsed between the verdict and sentencing in Chin.  That period of time is "too short" to complete litigation, given that the appeal process often takes longer than a few months.  Id.  But, that fact should not preclude WBUR's challenge to a delay in the disclosure of the requested information that, though shorter than the time frame for most litigation, was still significant enough to affect WBUR's reporting.  WBUR has also shown that it frequently requests that the District of Massachusetts unseal jury lists as soon as possible following a verdict in order to obtain information that would enable it to report on cases in the District.  And, WBUR has shown that, in a number of instances, judges in the District have waited until after sentencing to release the requested juror information.

Therefore, we conclude that WBUR has met its burden under the exception to the mootness doctrine on which it relies in asking us to consider its appeal with respect to the timing issue.  And so, satisfied that WBUR's appeal is not moot, and having disposed of the other possible jurisdictional issues that might have cut short our consideration of this appeal, we now turn to the merits of the case.

### III.

In considering the merits, we direct our attention chiefly to one of our prior precedents: In re Globe Newspaper Co., 920 F.2d 88 (1st Cir. 1990).  We do so because WBUR's appeal is premised in part on a contention about what that precedent holds.

WBUR stated in its motion requesting the disclosure of the juror information -- just as it now asserts on appeal -- that, "under controlling precedent, the identities of the jurors 'must be made public' after a verdict is rendered, unless the Court makes 'particularized findings reasonably justifying nondisclosure.'" The assertedly "controlling precedent" that WBUR identifies is In re Globe.  Because the interpretation of that precedent presents a purely legal question, our review of whether In re Globe controls the outcome here -- as WBUR contends that it does -- is de novo. See United States v. Mayendía-Blanco, 905 F.3d 26, 34 (1st Cir. 2018).  If we conclude that In re Globe does control here, then we must consider Court-appointed amicus's alternative argument that we should revisit that holding in light of changes in technology over the past thirty years since In re Globe was decided.

### A.

WBUR is right that, insofar as In re Globe requires a district court in a particular case to disclose juror names and addresses post-trial, but pre-sentencing, In re Globe allows for an exception to that requirement only if the district court makes

"particularized findings reasonably justifying non-disclosure."
See In re Globe, 920 F.2d at 98. WBUR is also right that such
"finding[s] of exceptional circumstances [must be] peculiar to the
case." Id. at 97. Moreover, In re Globe provides examples of
"[s]uch circumstances," and they include "a credible threat of
jury tampering, a risk of personal harm to individual jurors, and
other evils affecting the administration of justice." Id.

Here, the District Court did not make any
"particularized findings" regarding such exceptional circumstances
that were peculiar to this case. Nor does Court-appointed amicus
suggest that the District Court did so when denying in substantial
part WBUR's motion to release the requested information. Instead,
the District Court in its amended order recounted the jury's
historical role to explain, in part, its decision not to release
any of the requested information to WBUR until after sentencing
and not to release the jurors' addresses even then. The District
Court also placed great emphasis in its initial order on the
technological realities that supply the present context for WBUR's
request for juror information. As the District Court put it in
its initial order:

> While the court respects the role of the media
> in promoting "the public's long-term interest
> in maintaining an open judicial process," [In
> re Globe, 920 F.2d at 91], it will not release
> jurors' home addresses. . . . [T]his is . .
> . a necessary precaution in an age in which
> traditional boundaries of personal privacy are

under assault.  While jurors serve in an important public capacity, it is a role thrust upon them as a duty of citizenship.  The extent to which such service might compromise a juror's personal life once that service is concluded should be a matter in which the juror has the maximum say constitutionally possible.

Thus, the first question before us is whether In re Globe does indeed require, as WBUR contends, the requested disclosure of juror addresses (as opposed to merely hometowns) post-trial, absent the requisite "particularized findings" described above.  The second question that we must consider is whether In re Globe requires the requested disclosure to occur "as soon as possible" post-verdict, absent "particularized findings" to justify a delay in the release of juror identities until after sentencing, which here occurred three months after trial.  For, if In re Globe does impose either disclosure requirement in the absence of such findings, then the order partially denying WBUR's motion did not comply with that prior precedent.  We thus now review what we said in In re Globe.

### B.

The case arose out of the Globe Newspaper Company's request for access to the names and addresses of the jurors who had participated in a then-just-completed criminal trial in a federal district court in Boston.  Id. at 90.  The underlying

criminal case concerned an alleged conspiracy to conceal illegal drug profits involving three defendants.  Id.

The jury there had found two defendants guilty and one not guilty.  Id.  On the same day that the verdict was rendered and the jury was discharged, "Globe reporters sought access to the court's record of the juror names and addresses."  Id.

When the district court in that case refused to grant the reporters the requested access, the newspaper company moved to intervene and to request access to the court's record of the juror names and addresses.  Id.  That motion was denied, and the ensuing appeal by the newspaper company led to our decision in In re Globe.

In reversing the ruling below, we recognized the competing interests, constitutional and otherwise, implicated by the newspaper company's request for access to the names and addresses of jurors -- "the press's First Amendment right of access to criminal trials[,] the defendant's Sixth Amendment right to a fair trial[, and] the jurors['] interest in having their privacy protected."  Id. at 93 (citations omitted).  We also noted that "[k]nowledge of juror identities allows the public to verify the impartiality of key participants in the administration of justice, and thereby ensures fairness, the appearance of fairness and public confidence in that system."  Id. at 94.  And, too, we noted, the public disclosure of juror identities serves many of the same

purposes of "open justice" that are protected by the First Amendment to the United States Constitution.  Id.

We chose, however, not to rest our decision reversing the ruling below on a constitutional holding rooted in the First Amendment.  Instead, we based our decision on a construction of what was then § 10(c) of the District of Massachusetts Plan for Random Selection of Jurors ("Jury Plan"), which the District had adopted pursuant to the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861-1874 (1982) ("the Act").

In construing those texts, we noted at the outset that, although the language of the Act and of the Jury Plan make no specific distinction between pre-verdict and post-verdict disclosure of juror identities, "[t]he court's right to [keep names and addresses of jurors confidential] during the trial [was] not an issue in [In re Globe]."  In re Globe, 920 F.2d at 90.  We observed as well that "[n]o doubt stronger reasons to withhold juror names and addresses will often exist during trial than after a verdict is rendered" and stated that "[t]o justify impoundment after the trial has ended, the court must find a significant threat to the judicial process itself."  Id. at 91 (emphasis in original).

Against that background understanding, we then construed the Jury Plan in light of the newspaper company's request for post-verdict disclosure of juror identities.  In doing so, we noted that the Jury Plan's relevant provision barred the disclosure of

juror names until the jurors "have appeared, or failed to appear, in response to the summons." In re Globe, 920 F.2d at 92 & n.4 (quoting Jury Plan § 10(c)). We noted as well that this same provision then went on to state that "[a]ny judge of this Court may order that the names of jurors remain confidential even thereafter if the interests of justice so require." Id. (emphasis omitted) (quoting Jury Plan § 10(c)).[4]

With those observations in place, we then "construe[d] the § 10(c) interests-of-justice exception as contemplating the [post-verdict] withholding of juror identities only upon a finding of exceptional circumstances peculiar to the case" and thus "h[e]ld that, given the absence [in In re Globe's case] of particularized findings reasonably justifying non-disclosure, the juror names and addresses must be made public." Id. at 97-98. Moreover, we explained that "we construe ['names' in § 1863(b)(7) of the Act] to encompass [jurors'] addresses" because addresses might be

---

[4] The Act, § 1863(b)(7) provides:
        Among other things, such plan shall—
        (7) fix the time when the names drawn from the qualified
        jury wheel shall be disclosed to parties and to the
        public. If the plan permits these names to be made
        public, it may nevertheless permit the chief judge of
        the district court, or such other district court judge
        as the plan may provide, to keep these names confidential
        in any case where the interests of justice so require.
Although this provision of the Act "suggest[s] that a local [jury]
plan might optionally decline not to permit juror names to be made
public at all," the District of Massachusetts's Jury Plan clearly
does so permit. See In re Globe, 920 F.2d at 92.

necessary to identify an individual with a common name.  Id. at 93 n.6.[5]  Thus, we concluded "that addresses as well as names are presumptively available to the public under the [Jury Plan]," and thus that juror "[a]ddresses as well as names may be withheld by court order where the interests of justice so require, e.g., where security considerations or matters of similar import are involved."  Id.[6]

Despite these seemingly definitive statements about the requirement to disclose the requested information, Court-appointed amicus argues that, with respect to the disclosure of juror addresses, In re Globe at most sets forth dicta that does not bind us here.  To support this contention, Court-appointed amicus both asserts that In re Globe "did not address the precise issue before

---

[5] The Jury Plan implements the Act, and therefore, the reference to "names" in § 10(c) of the Jury Plan, like the reference to "names" in the Act, is construed to include addresses. See id. at 93 n.6.

[6] The Jury Plan was revised in 2015 to include a new summoning and qualification procedure.  In that revision, the text of what was § 10(c) in 1990, when In re Globe was decided, is now included verbatim in § 10(a).  And it is that provision in the revised Jury Plan that is now in place.  The parties do not argue that this change in the location of the relevant text makes In re Globe's construction of the same operative language any less binding on us than it would be if the Jury Plan that was before the court in In re Globe was still in place.  And we see no reason to conclude otherwise.  Thus, this feature of our case supplies no reason for concluding that In re Globe does not bind us.

this panel" and then characterizes that issue as being whether hometowns would suffice to identify jurors.

The issue that we must decide, however, is not whether, in principle, addresses are necessary in order to identify jurors. The issue is whether In re Globe, in construing the same language in the Jury Plan that is at issue here, holds that, presumptively, they are.  And, we conclude that In re Globe most certainly does so hold, as the review of that precedent that we have set forth above reveals.

The requirement that addresses must be disclosed so that jurors may be identified is expressly part of In re Globe's instructions to the district court in that case.  Id. at 98.  In addition, In re Globe explains its reasoning on that score as follows: "an address as well as the name is necessary to identify the individual [in some cases]" and "therefore, . . . addresses as well as names are presumptively available to the public under the [Jury Plan]."  Id. at 93 n.6 (emphasis added).

Nor does In re Globe's use of the qualifier "presumptively" before the word "available" support the view put forth by Court-appointed amicus.  See id.  That qualifier, considered in context, merely reflects In re Globe's conclusion that, in light of the principles that favor the disclosure of juror identities, the obligation to disclose imposed by the language of § 10(c) may be overcome with respect to the release of juror

addresses only if a district court makes the requisite "particularized findings." See id. at 98.

Thus, we reject Court-appointed amicus's contention that In re Globe does not render a holding on whether juror addresses may be withheld post-verdict. It clearly does, as it holds that, save for such findings, the addresses may not be so withheld. See Arcam Pharm. Corp. v. Faría, 513 F.3d 1, 3 (1st Cir. 2007) ("We have held that 'when a statement in a judicial decision is essential to the result reached in the case, it becomes part of the court's holding.' The result, along with those portions of the opinion necessary to the result, are binding, whereas dicta is not." (quoting Rossiter v. Potter, 357 F.3d 26, 31 (1st Cir. 2004)) (citation omitted)). And, we note, WBUR has represented that addresses are necessary to identify some jurors in this case.

We next must consider whether In re Globe also holds that the timing of the disclosure of the requested juror information may not be delayed until after sentencing. Here, too, we conclude that In re Globe does so hold.

In re Globe makes clear that it is deciding "the right of access to juror names and addresses following a trial" rather than during a trial, id. at 95, and that it is holding that, after a trial is complete, "juror names and addresses must be made public" in "the absence . . . of particularized findings reasonably justifying non-disclosure," id. at 98. The logic of In re Globe

thus requires that any delay in post-verdict disclosure be justified by the requisite "particularized findings."

After all, In re Globe sets no limit for what would amount to an acceptable delay without such findings. Rather, it clearly states, "[t]o justify impoundment after the trial has ended, the court must find a significant threat to the judicial process itself." Id. at 91. Accordingly, we reject the contention that In re Globe addresses only the issue of whether the permanent impoundment of the relevant juror information is permissible.

To be sure, In re Globe does, as Court-appointed amicus notes, cite favorably to United States v. Doherty, 675 F. Supp. 719 (D. Mass. 1987), in which the court delayed the release of juror identities until one week after trial. The Doherty court reasoned that such a delay would "not injure the values to be furthered by a searching press inquiry into the lives of the jurors" while at the same time affording jurors, among other things, "a short breathing space to reflect on the experience of jury service and, after consultation with family and friends, determine what, if anything, the juror wishes to discuss with the press." Id. at 725.

But, even assuming that In re Globe's citation of Doherty indicates that there is some such brief time period that could constitute an acceptable delay, the three-month delay in this case far outstrips such a period. And so, once again, we reject the

contention of Court-appointed amicus that In re Globe sets forth no holding on the relevant point.

### c.

We recognize, of course, that In re Globe was decided decades ago and thus well before the first tweet was tweeted.  As the District Court emphasized, there is now a greater potential for the public release of a juror's name, and, especially, a juror's address, to be more intrusive and concerning than would have been the case in an era in which social media was unknown.

But, these technological changes have by no means diminished the need for accountability and transparency in our system of justice that In re Globe treats as relevant in construing the critical provision of the Jury Plan.  Nor is In re Globe dogmatic in reading that Jury Plan language to favor, on balance, disclosure.  Rather, it construes the Jury Plan's relevant text to permit nondisclosure in cases of individualized and adequately demonstrated need.

In any event, for present purposes, what matters is not how, all things considered, one might now choose to strike the balance that In re Globe holds that the Jury Plan's key provision had struck.  What matters is that In re Globe does render a holding about that balance and that "[i]n a multi-panel circuit, newly constituted panels are, for the most part, bound by prior panel

decisions closely on point." Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995).

"This tenet embodies what has come to be known as the law of the circuit doctrine, which is a 'subset of stare decisis' [and] one of the sturdiest 'building blocks on which the federal judicial system rests.'" United States v. Barbosa, 896 F.3d 60, 74 (1st Cir. 2018) (quoting San Juan Cable LLC v. P.R. Tel. Co., 612 F.3d 25, 33 (1st Cir. 2010)). And while there are exceptions to this doctrine that account for the circumstance when there has been intervening precedent, id., those exceptions do not apply here, nor does Court-appointed amicus or the District Court offer any basis for concluding otherwise.

As a result, we are bound, under the law of the circuit doctrine, to construe the operative language of the Jury Plan that is at issue in this case in the same manner that we construed the exact same language in In re Globe. And, for that reason, we cannot accept the District Court's legal conclusion that "concerns for juror privacy and a lack of precedent requiring the disclosure of jurors' home addresses" provide a justification for a generalized ruling that "a release of jurors' names, together with their home towns, at the appropriate time (after sentencing), strikes the proper balance between the public right of access and the juror right to privacy."

Moreover, we note that a district court's "supervisory power does not license it to ignore an otherwise valid existing jury plan or to bypass the mechanism provided by statute to alter such plan [because] '[t]o allow otherwise "would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing."'" In re United States, 426 F.3d 1, 9 (1st Cir. 2005) (quoting Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988)). Thus, in light of In re Globe's holding about the meaning of the text of the Jury Plan that is at issue and the law of the circuit doctrine, the proper way for concerns about juror privacy to be addressed is through the process of amending the Jury Plan itself, insofar as any such amendment to the Jury Plan would be lawful -- a question that we do not purport to address here.[7]

---

[7] The District Court concluded its amended order by stating: "The court would also suggest that any judge evaluating this same issue consider whether he or [she] would disclose his or her home address when issuing orders or rulings." Here, we must rule as we do in consequence of our prior holding in In re Globe and the law of the circuit doctrine. We do note, though, that, in construing the Jury Plan to require the disclosure of juror names and addresses post-verdict absent the requisite "particularized findings," In re Globe emphasizes that jurors are not otherwise sufficiently identifiable to the press and public. See In re Globe, 920 F.2d at 93 n.6, 97-98. That reasoning does not apply to judges. It also bears mentioning that it would be impossible for judges to keep their addresses confidential during trials in which they presided if they were required to disclose them post-verdict, given that a judge is, by design, the quintessential repeat player. No equivalent conundrum presents itself with respect to jurors.

## IV.

The obligation of jury service is one of the most important that our government imposes on its citizens. It is, therefore, important to ensure that the fulfillment of this obligation is not made so burdensome that it becomes more than a citizen should have to bear. It is important to ensure as well, though, that our system of justice remains accountable to the broader public that it serves.

The District of Massachusetts Jury Plan reconciles these competing concerns through the language now set forth in § 10(a). This Court, nearly three decades ago, construed that exact same language to require the post-verdict disclosure of juror names and addresses, absent a district court having made the requisite "particularized findings" to justify either nondisclosure or a delay in disclosure. No precedent of this Court or the Supreme Court has come down in the interim that in any way calls In re Globe's holding about how that language must be construed into question. Thus, In re Globe dictates the outcome that we reach here and thus precludes us from affirming the contrary one reached by the District Court.

Nevertheless, it would be imprudent to prevent the District Court from considering on remand what it concluded that it was not required to consider -- namely, whether this particular case presents the kind of "exceptional circumstances" that In re

Globe contemplates.[8]    Thus, we instruct the District Court on remand to follow the rule set forth in In re Globe and to unseal the list of juror names and addresses as WBUR requested in its motion, unless the District Court first makes the kind of "particularized findings" that could justify either the nondisclosure of that information or the disclosure of it only with lawful conditions tailored to those findings.  Accordingly, the District Court's order is **vacated** and **remanded** for proceedings consistent with this opinion.

---

[8] WBUR asserted in its motion that, "[u]nder the standards set forth by the First Circuit, no such findings can be made here." But, rather than develop any argument as to this issue on appeal, WBUR simply states that "this case [does not] present any of the kinds of factors that, in the unusual case, could present 'specific and convincing reasons' for withholding juror identities." Thus, the argument that no such findings can be made is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (explaining that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").